ams

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| ROBERT BOATRIGHT, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 05-3183-JAR |
| ) | |
| LISA BELL, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM AND ORDER**

Before the Court is defendant's Motion for Summary Judgment (Doc. 53). The motion is fully briefed and the Court is prepared to rule. As explained more fully below, the Court grants defendant's motion.

**I.     Summary Judgment Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."[1] The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[2] Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[3]

---

[1] Fed. R. Civ. P. 56(c).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id*. at 251–52.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case.[4] Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial.[5] "A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial."[6] Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.[7] The court must consider the record in the light most favorable to the nonmoving party.[8]

The Court is also mindful that plaintiff is a *pro se* litigant in this case. A *pro se* litigant's pleadings are to be liberally construed and are held to a less stringent standard.[9] This rule requires the Court to look beyond a failure to cite proper legal authority, confusion of legal theories, and poor syntax or sentence construction.[10] The Court, however, is not authorized to become an advocate for the *pro se* litigant.[11] "Despite the liberal construction afforded pro se

---

[4]*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

[5]*Anderson*, 477 U.S. at 256.

[6]*Id*.

[7]*Id.*

[8]*Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir. 1984), *cert. denied*, 469 U.S. 1214 (1985).

[9]*Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[10]*Id*. at 1110.

[11]*Id*.

pleadings, the court will not construct arguments or theories for the plaintiff in the absence of any discussion of those issues."[12] Moreover, plaintiffs are not excused from compliance with fundamental rules of procedure because they are proceeding *pro se*.[13] *Pro se* litigants must follow rules of procedure, including local rules.[14] Plaintiff's *pro se* status, in and of itself, does not prevent this Court from granting summary judgment.[15]

## II.     Uncontroverted Facts

The following facts are either uncontroverted, stipulated to, or viewed in the light most favorable to plaintiff.[16] During all times relevant to this action, plaintiff was housed in the sexual predator treatment program at Larned State Hospital ("LSH") pursuant to civil commitment under Kansas law. Several years prior to his commitment at LSH, plaintiff was involved in a motorcycle accident; he was subsequently diagnosed with cervical stenosis. The extent of plaintiff's disability has been disputed by his treating physicians, but they have agreed that such a condition would cause plaintiff some amount of pain. Over the course of plaintiff's confinement, he has been provided with several different prescription drugs for pain, including

---

[12]*Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991).

[13]*Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994), *cert. denied*, 513 U.S. 1090 (1995).

[14]*Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992), *cert. denied*, 507 U.S. 940 (1993); *Campbell v. Meredith Corp.*, 260 F. Supp. 2d 1087, 1097 n.10 (D. Kan. 2003).

[15]*Northington v. Jackson*, 973 F.2d 1518, 1521 (10th Cir. 1992).

[16]Pursuant to D. Kan. R. 56.1(a), "[a]ll material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party." In his response to defendant's motion, plaintiff fails to controvert defendant's statements of fact in accordance with this rule. The Court has examined defendant's submissions to determine if they have met their initial burden under Fed. R. Civ. P. 56 of demonstrating that no material issues of fact remain for trial and that the moving party is entitled to judgment as a matter of law. Where defendant's statements of fact find support in the record, the Court adopts such facts as uncontroverted. *See Reed v. Bennett*, 312 F.3d 1190, 1194–95 (10th Cir. 2002).

3

Roxicet. Roxicet is a brand name for the drug oxycodone/APAP 5/325. It is a scheduled narcotic drug under the Controlled Substances Act.

On October 29, 2004, Shelly Holder, R.N., reported to her nurse leader that when she attempted to administer plaintiff his Roxicet that day, he looked at the pills and told her that they were not Roxicet. Plaintiff did not ingest the pills. Holder reported that she checked the package and other drugs located in the medication rooms and believed the pills to be Tylenol capsules. Holder then made arrangements to obtain a limited supply of Roxicet tablets from the Satellite Pharmacy for plaintiff.

Defendant Lisa Bell, R.N., reported to her nurse leader that on October 30, 2004, she handed plaintiff what she believed was Roxicet and he told her that they did not look like Roxicet. Bell took the pills back from plaintiff and examined them. Bell decided that the pills looked like generic ibuprofen after comparing them to another resident's ibuprofen pill. Bell then locked the drug package in the nurse leader's office and reported the incident to Betty Seba, a Pharmacist at Larned. Plaintiff did not ingest the pills. Plaintiff does not allege that any physical injury occurred as a result of these two incidents.

Bell contacted her supervisors and an investigation ensued. The investigation concluded that at some point during October 2004, an unknown party tampered with medications kept in a secure area at LSH. One of the medications tampered with was Roxicet. The packaging had been sliced open carefully, the medications removed, and replacement pills inserted. The replacement pills were later identified as acetaminophen tablets, an over-the-counter pain reliever. No person was ever identified as responsible for the theft.

**III.    Discussion**

The only remaining claim in this matter is plaintiff's claim against Bell pursuant to 42 U.S.C. § 1983 for deliberate indifference to his serious medical needs under the Eighth and Fourteenth Amendments.[17]  Bell argues that summary judgment is appropriate because she is entitled to qualified immunity for actions taken in her individual capacity, or in the alternative, that plaintiff has failed to show causation or damages given that he never ingested the tampered medication.

Under section 1983, a suit against a government official may be made to impose individual liability for actions taken under color of state law.[18]  To establish individual liability in a section 1983 suit, a plaintiff only need show that the official, "acting under color of state law, caused the deprivation of a federal right."[19]  A defendant sued in her individual capacity may be able to assert personal immunity defenses such as qualified immunity.[20]

When a defendant asserts a qualified immunity defense on summary judgment, plaintiff has a two-part burden.  Plaintiff must come forward with facts or allegations that the defendant's conduct was a violation of a clearly established constitutional or statutory right at the time of its occurrence and that the violated right was "clearly established such that a reasonable person in the defendant's position would have known the conduct violated the right."[21]  The issue of

---

[17]The Court clarified in its September 11, 2007 Memorandum and Order that LSH was not a proper party to this lawsuit, therefore, the only remaining claims are those that apply to defendant Bell in her individual capacity (Doc. 85).  Accordingly, the Court need not address the portion of Bell's motion for summary judgment that pertains to plaintiff's Fifth Amendment claim against LSH, as it was dismissed.  *See also* Pretrial Order, Doc. 95.

[18]*Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

[19]*Id.* at 165.

[20]*Id.*

[21]*Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997); *see Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 646 (10th Cir. 1988).

immunity is a legal one and the Court may not avoid it by framing it as a factual issue.[22]

The Court must first consider whether, viewing the evidence in the light most favorable to plaintiff, the facts show that Bell's actions violated plaintiff's Eighth Amendment rights"[23] The test for deliberate indifference under the Eighth Amendment contains "both an objective and subjective component."[24] The objective component "is met if the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause."[25] The subjective component of the deliberate indifference standard requires that the official "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[26] Deliberate indifference is a higher standard than either simple negligence or heightened negligence.[27]

Under the objective component, the Court must decide if the harm suffered by plaintiff was "sufficiently serious." There is no evidence that plaintiff was harmed in any way by the tampered-with medication; indeed there is no evidence that he ever ingested the medication. Plaintiff alleges in his response to the motion for summary judgment that he had complained to several medical staff members that "he was hurting more and that he was receiving different pills and he was informed by other staff to start keeping an eye on his pills, and after four complaints and actually giving the pills back to the medical staff did they question the different pills."

---

[22]*Lawmaster*, 125 F.3d at 1347.

[23]*Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Mata v. Saiz*, 427 F.3d 745, 749 (10th Cir. 2005).

[24]*Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006).

[25]*Id.* (quotations omitted).

[26]*Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998); *see Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

[27]*Bd. of County Comm'rs v. Brown*, 520 U.S. 397, 407–10 (1997).

Intermediate pain, such as that "experienced while waiting for treatment and analgesics," may constitute substantial harm,[28] but "not every twinge of pain suffered as the result of delay in medical care is actionable."[29]

The Court finds that Bell has sustained her burden of pointing to a lack of evidence in the record that plaintiff suffered a sufficiently serious harm. The only possible allegation of intermediate pain is plaintiff's unsupported assertion in his response that his pain was worse for a period of time prior to Holder's and Bell's discovery that the Roxicet has been tampered with. But plaintiff points the Court to no evidence that he actually ingested the medication and that it caused him increased pain that would rise to the level of a substantial harm. In fact, the evidence shows that " [t]here is no independent method to determine how long this tampering had occurred, but Robert Boatright's medical records do not review any complaints or progress notes out of the ordinary for him as he frequently voiced complaints about his back and legs hurting."[30]

Even if plaintiff was able to show the objective component of his claim, plaintiff is unable to point the Court to evidence in support of the subjective component of deliberate indifference. To make such a showing, plaintiff "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."[31] Plaintiff makes a number of conclusory, unsupported allegations in his response about Bell but fails to allege or point the Court to any evidence that she either knew or had

---

[28]*Kikumura*, 461 F.3d at 1292.

[29]*Mata v. Saiz*, 427 F.3d 745, 755 (10th Cir. 2005) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)).

[30](Doc. 27, Ex. 7 ¶ 17.)

[31]*Kikumura*, 461 F.3d at 1292 (quotations omitted).

reason to know that plaintiff faced a substantial risk of harm if she administered him the medication at issue. There is no evidence that Bell was aware of the incident the day before when Holder attempted to administer the medication, nor is there any evidence that she was aware that the medication had been tampered with. Because plaintiff is unable to come forward with evidence of either the objective or subjective components of his deliberate indifference claim, summary judgment is appropriate.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's Motion for Summary Judgment (Doc. 53) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 26th day of March, 2008.

S/ Julie A. Robinson
Julie A. Robinson
United States District Judge